UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **WILLIAM R.,**<br><br> Plaintiff,<br><br> v.<br><br>**KILOLO KIJAKAZI, Acting Commissioner of Social Security,**<br><br> Defendant. | Civ. No. 22-00690 (KM)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

 Plaintiff William R. brings this action to review a final decision of the Commissioner of Social Security ("Commissioner") denying his claims for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI"). He argues that the ALJ's determination that he is not disabled as defined by Title II of the Social Security Act was not supported by substantial evidence. For the reasons stated below, the Commissioner's decision is **AFFIRMED**.

**I. BACKGROUND**[1]

 William R. applied for DIB pursuant to Sections 216(i) and 223(d) of the Social Security Act ("SSA") on August 7, 2018. He claimed a period of disability

---

[1] Citations to the record are abbreviated as follows:

  "DE" = docket entry

  "R. _" = Administrative Record (DE 5)

  "Pl. Br." = William R.'s moving brief (DE 8)

  "Def. Br." = SSA Commissioner's opposition brief (DE 9)

Claimant's moving brief was filed many months late, in response to a reminder from the clerk. The government responded timely to the claimant's brief. Doubtless the claimant's late filing resulted from an innocent oversight. As a result, however, the Court could meet its own periodic six-month deadline under the Civil Justice Reform Act only by filing its decision before an optional reply brief would have been due. If

beginning on June 20, 2017, based on the following physical impairments: 1) degenerative disc disease of the lumbar spine, 2) degenerative disc disease of the cervical spine, 3) fluctuating hearing loss of the right ear, 4) hypertension, 5) obesity, 6) diabetes mellitus, and 7) tinnitus of the right ear.[2] (R. 23-24.) His application was denied initially and upon reconsideration. (R. 61, 70.) On February 11, 2020, he had a hearing before an Administrative Law Judge ("ALJ") to review his application de novo. (R. 36-60.) ALJ Beth Shillin heard testimony from the plaintiff, who was represented by counsel, and from a vocational expert. On March 2, 2020, ALJ Shillin issued a decision finding that William R. has the residual functional capacity to perform medium work activities with postural, environmental, and communicative limitations. (R. 18-35.) The Appeals Council denied Plaintiff's request for review on December 15, 2021, rendering the ALJ's decision a final decision of the Commissioner. (R. 1–6.) This appeal followed.

II. **DECISION FOR REVIEW**

   **A. The Five-Step Process and this Court's Standard of Review**

   To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423. To qualify, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(c), 1382(a).

   Under the authority of the SSA, the Social Security Administration (the "Administration") has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the

---

necessary, the Court will consider an informal motion for reconsideration incorporating any additional arguments the claimant may wish to assert in reply.

[2]   William R. originally alleged disability beginning May 20, 2017, but later revised his alleged onset date to June 20, 2017, to correspond with the date he last worked. (R. 21.)

ALJ properly followed the five-step process, which is prescribed by regulation. The steps may be briefly summarized as follows:

>**Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 CFR §§ 404.1520(b), 416.920(b). If not, move to step two.
>
>**Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.
>
>**Step 3:** Determine whether the severe impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 CFR Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive disability benefits (and the analysis ends); if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).
>
>**RFC and Step 4:** Determine the claimant's "residual functional capacity" ("RFC"), meaning "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). *Caraballo v. Comm'r of Soc. Sec.*, 2015 WL 457301, at *1 (D.N.J. Feb. 3, 2015). Decide whether, based on his RFC, the claimant can return to her prior occupation. 20 C.F.R. § 1520(a) (4)(iv); *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.
>
>**Step 5:** At this point, the burden shifts to the Administration to demonstrate that the claimant, considering his age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 CFR §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

On appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual

findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007). Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence that the claimant is disabled and entitled to benefits. *Podedworny*, 745 F.2d at 221–222; *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable."). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

**B. The ALJ's Decision**

ALJ Damille undertook the necessary step-by-step inquiry.

### Step 1

The ALJ concluded William R. had not engaged in substantial gainful activity from June 20, 2017, the alleged onset date. (R. 23.)

### Step 2

The ALJ found that through the date last insured, William R. had the following severe impairments: mild degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, and mild to moderate high frequency fluctuating hearing loss of the right ear. (R. 23 (citing 20 CFR 404.1520(c).)

Appropriately citing to the medical evidence and administrative record, the ALJ found that the following claimed conditions had, at most, a minimal impact on the claimant's ability to perform basic work activities: hypertension, obesity, diabetes mellitus, and tinnitus of the right ear. (R. 24.)

### Step 3

With respect to the impairments found to be severe, the ALJ determined that William R. did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 24.) In particular, the ALJ's

discussion of the evidence focused on Listings 1.04 (disorders of the spine)[3] and 2.10 (hearing loss not treated with cochlear implantation)[4].[5]

## RFC and Step 4

---

[3] **1.04 *Disorders of the spine*** (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
>> OR
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
>> OR
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in [Listing] 1.00B2b.

[4] **2.10 *Hearing loss not treated with cochlear implantation.***

> A. An average air conduction hearing threshold of 90 decibels or greater in the better ear and an average bone conduction hearing threshold of 60 decibels or greater in the better ear (see [Listing] 2.00B2c).
>
>> OR
>
> B. A word recognition score of 40 percent or less in the better ear determined using a standardized list of phonetically balanced monosyllabic words (see [Listing] 2.00B2e).

[5] Since the time of the ALJ's decision in this case, the Social Security Administration passed rules revising its criteria for examining spinal disorders, replacing Listing 1.04 with two new Listings, 1.15 (Disorders of the skeletal spine resulting in compromise of a nerve root(s)) and 1.16 (Lumbar spinal stenosis resulting in compromise of the cauda equina).

Next, ALJ Shillin defined the claimant's RFC:

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except no ladders, scaffolds, ropes, heavy machinery, or heights; frequent stairs, ramps, crouching, crawling, stooping, kneeling, and balancing; and due to hearing loss, only occasional contact with the general public, co-workers, and supervisors.

(R. 25.) The ALJ analyzed at length the evidence supporting that RFC determination. (R. 25-29.)

Based on the RFC, the ALJ concluded at Step 4 that William R. is capable of performing past relevant work as a warehouse worker. (R. 29.) As required, the ALJ considered William R.'s position both as he actually performed it and as it is generally performed. Because the ALJ found William R. is capable of performing past relevant work, she concluded her analysis at Step 4 and did not move on to Step 5.

## III.  DISCUSSION

In his appeal, William R. asserts that the ALJ's RFC assessment was flawed in two ways. First, he contends that the assessment is not supported by substantial evidence because the ALJ did not "engage in the required functional analysis," *i.e.*, she did not identify William R.'s functional limitations or restrictions and assess his work-related abilities on a function-by-function basis. (Pl. Br. 12 (citing SSR 96-8p).) Second, and relatedly, he argues that the assessment is unsupported because the ALJ's decision did not "define the tasks and abilities that must be sustained in order to perform medium work activity." (*Id.* 12-13 (citing SSR 83-10.) I address each of these arguments in turn.

### A. Functional Analysis

I find that ALJ Shillin engaged in an extensive functional analysis in performing her RFC assessment and determining that William R. was capable of performing medium work, as defined in 20 C.F.R. 404.1567(c), subject to certain postural and environmental limitations. Her detailed examination of the

7

objective medical evidence pertaining to "the intensity, persistence, and limiting effects" of William R.'s symptoms indicates that her RFC determination is supported by substantial evidence and indeed resulted from "careful consideration of the entire record." (R. 25.)

*First*, ALJ Shillin addressed William R.'s June 20, 2017 visit to the emergency department after a piece of marble hit him on the back and knocked him to the ground during work. (*Id.*) She noted that a CT scan of William R's head showed no acute intracranial hemorrhage and that during follow-up examinations in August 2017 and September 2017, William R. denied experiencing any headaches, head injury, joint pains, tingling, numbness, paresthesia, weakness, or dizziness. (*Id.*).

*Second*, ALJ Shillin considered the results of William R.'s primary care examinations through the end of September 2017, finding no remarkable physical limitations. (*Id.* 27.) She noted multiple occasions in which William R.'s primary care physician, Dr. Ombola Abiodun Oji, found that William R. had normal range of motion of the cervical and lumbar spine with normal straight leg raise testing and no cervical or lumbar tenderness. (*Id.*) In addition, ALJ Shillin noted that Dr. Oji routinely found William R. to have normal range of motion of the lower extremities along with normal bilateral motor strength, sensation, coordination, and gait. (*Id.*) In her decision, ALJ Shillin remarks that these findings, as they relate to William R.'s functional limitations, were consistent with those from another physical examination performed by Dr. Anthony Tarasenko during September 2017, which demonstrated that William R. had "full range of motion, no deformity, no tenderness, and normal strength of his bilateral shoulders, arms, elbows, wrists, hands, fingers, lower extremities, cervical spine, thoracic spine, and lumbosacral spine." (*Id.* 27.)

*Third*, ALJ Shillin considered the results of William R.'s orthopedic examinations with Dr. Patricio Grob in 2017, observing that they were generally "benign." (*Id.*) She noted that although Dr. Grob observed that William R. had decreased range of motion of the lumbar spine with poor lower

extremity flexibility in September 2017, the following month Dr. Grob observed that William R.'s range of motion improved. (*Id.*)

*Fourth*, ALJ Shillin considered notes from William R.'s physical therapy sessions in late 2017, which indicated little to no physical limitation. The notes indicate that William R. had nearly full range of motion of the cervical and lumbar spine, intact sensation, and intact and symmetrical deep tendon reflexes. (*Id.*) In addition, William R. reported to his physical therapist that his neck and back pain improved with treatment. Moreover, the notes indicate that William R. reported being able to go on 30 minute walks, use stairs to reach his third-story home, and exercise with a weighted vest at home while walking. (*Id.*) Most significantly, William R.'s physical therapist noted observing William R. 1) completing 10 repetitions of lifting 40 pounds, 2) pushing/pulling 110 pounds, 3) sitting for 30 minutes and ambulating for 20 minutes, and 4) ascending and descending stairs and a ladder. (*Id.*)

*Fifth*, ALJ Shillin considered records from William R.'s medical consultative examination with Dr. Betty Vekhins, during which William R. was able to walk without an assistive device, walk on heels and toes, and squat. (*Id.*) These records also reflected Dr. Vekhins' observations that William R. ha a full range of motion of the cervical spine, no vertebral tenderness, no abnormal tilt. Dr. Vekhins also observed that William R. had nearly full range of motion of the lumbar spine, with no worsening pain on straightening, and negative straight leg raise testing in the seated and spine positions. (*Id.*) In addition, William R. had full range of motion of his bilateral shoulders, elbows, wrists, and hands with normal grip strength and no sensory loss, and Dr. Vekhins also noted that he had full range of motion of his bilateral hips, knees, and ankles, with no focal weakness, no sensory loss, and no swelling or deformity. (*Id.*)

*Sixth*, ALJ Shillin discussed a series of examinations by William R.'s orthopedist, Dr. Daniel Harrington. (*Id.* 28.) In October 2019, Dr. Harrington observed that William R. had reduced range of motion of the lumbar spine with

9

tenderness to palpation diffusely throughout. (*Id.*) However, Dr. Harrington found that William R. had intact strength, sensation, and deep tendon reflexes. Dr. Harrington also noted that although an x-ray of William R.'s lumbar spine showed mild degenerative changes, these changes appeared to be age-related, as the imaging did not show any sign of previous trauma. Dr. Harrington recommended physical therapy for generalized strengthening of the low back and extremities. (*Id.*) In November 2019, William R. returned to Dr. Harrington with additional complaints of neck and right shoulder pain. (*Id.*) Dr. Harrington found that William R. had reduced range of motion of the cervical spine, but was neurovascularly intact. (*Id.*) During return visits in December 2019 and January 2020, Dr. Harrington observed similarly mild functional limitations, again noting a reduced range of motion of the lumbar spine with midline tenderness and left sacroiliac joint pain but documenting that William R. possessed intact strength and sensation.[6] (*Id.*)

*Seventh*, ALJ Shillin examined evidence regarding William R.'s functional limitations resulting from his hearing disorder. September 2019 audiometry testing demonstrated mild to moderate sensorineural hearing loss in William R.'s right ear. (*Id.*) In terms of functional findings, the audiometry testing revealed that William R.'s right ear speech reception was 96 percent and his left ear speech reception was 100 percent. (*Id.*) All other findings with respect to William R.'s hearing were normal, as he demonstrated no ear effusion, and no speech problems. (*Id.*)

William R. does not contest the objective evidence ALJ Shillin considered, nor does he argue ALJ Shillin failed to consider other evidence that does not appear in her decision. Instead, he merely disagrees with ALJ Shillin's ultimate assessment that he is capable of medium work, *i.e.*, "lifting no more than 50

---

[6] During William R.'s January 2020 visit with Dr. Harrington, an MRI of the lumbar spine demonstrated mild disc disease with an anterior spondylolisthesis of L4 and L5 and mild bilateral lateral recess stenosis at L4-5. (R. 28.) Notably, Dr. Harrington's records document that there was no significant change compared to the findings from prior imaging in October 2017. (*Id.*)

10

pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. 404.1567(c). William R. points to a handful of excerpts in ALJ Shillin's decision that he "regards as significant evidence contradicting a medium work RFC," none of which I find persuasive. (Pl. Br. 15-17.) The only listed excerpts that bear on William R.'s functional limitations pertain to William R.'s reduced range of motion of the lumbar and cervical spine, poor lower extremity flexibility, tenderness to palpation, as well as neck and joint pain, all of which ALJ Shillin considered within the context of the objective medical record. None of these issues, which ALJ Shillin determined to be mild in severity and persistence, indicates that William R. is incapable of medium work. In fact, taken together, the excerpts highlighted by William R. *support* the ALJ's RFC assessment. For instance, William R. points out that his "physical therapist observed that he could do ten repetitions of lifting 40 pounds and pushing/puling 110 pounds; stand and sit for 30 minutes and ambulate for 20 minutes in duration; and he was able to ascend and descend stairs and a latter." (Pl. Br. 16 (citing R. 27).)

The objective medical record includes ample evidence demonstrating that William R. is capable of performing medium work, consistent with the ALJ's RFC assessment.[7] As for the process by which ALJ arrived at her RFC determination, the excerpts William R. lists in his brief show that ALJ Shillin engaged in the very functional analysis that William R. claims she failed to conduct.

---

[7]   William R. also appears to take issue with the ALJ's finding that his obesity is not a severe medically determinable impairment. (Pl. Br. n. 7.) However, the only evidence he proffers to suggest that this finding was erroneous is a treatment plan Dr. Harrington prescribed to William R. that consisted of "low impact exercise and weight loss." (*Id.*) The fact that a medical professional directed William R. to exercise and lose weight does not warrant a finding that his obesity is severe. In fact, ALJ Shillin specifically observed that the objective medical record contained "no evidence of any specific or quantifiable impact on pulmonary, musculoskeletal, endocrine, or cardiac functioning." (R. 24.) Substantial evidence supports the ALJ's finding that William R.'s obesity, considered alone or in combination with other impairments, is not severe.

### B. Defining Medium Work Tasks and Abilities

I find that ALJ Shillin did not err by declining to specifically define all the "tasks and abilities that must be sustained in order to perform medium work." (Pl. Br. 12-13.) In addition to 1) "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds," these tasks and abilities include 2) "standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday;" 3) "use of the arms and hands [] to grasp, hold, and turn objects; 4) "frequent bending [and] stooping; and 5) "flexibility of the knees and torso." (Pl. Br. 13-14 (citing SSR 83-10).) William R. contends that the ALJ's RFC assessment is not supported by substantial evidence because it does not articulate William R.'s ability to perform each of these tasks. Although ALJ Shillin did not list each of these tasks and abilities in her decision, her examination of the objective medical evidence clearly addressed all five categories:

*First*, ALJ Shillin addressed William R.'s lifting ability when she examined his 2019 physical therapy records that documented William R. being able to complete "ten repetitions of lifting 40 pounds and pushing/pulling 110 pounds." (R. 27.)

*Second*, ALJ Shillin addressed William R.'s walking ability when she examined his 2017 physical therapy records noting that William R. "reported that he was able to go on 30 minute walks, use stairs to get to his third story home, and exercise with [a] weighted vest at home while walking," as well as being able to "ascend and descend stairs and a ladder." (*Id.*) The ALJ also reviewed evidence from William R.'s medical consultative examination with Dr. Vekhins during which William R. "walked without an assistive device and walked on heels and toes." (*Id.*)

*Third*, ALJ Shillin also addressed William R.'s ability to grasp and hold objects when she reviewed the evidence from his visit with Dr. Vekhins, during which William R. had "full range of motion of his bilateral shoulders, elbows, wrists, and hands with normal grip strength and no sensory loss." *Id.*

12

*Finally*, ALJ Shillin addressed William R.'s bending and stooping ability, as well as the flexibility of his knees and torso, when she considered Dr. Vekhins' notes that William R. was able to squat and had "full range of motion of his bilateral hips, knees, and ankles, no focal weakness, no sensory loss, and no swelling or deformity." (*Id.*) These findings were corroborated by additional evidence ALJ Shillin considered, including notes from William R.'s physical therapy sessions, during which he climbed stairs and a ladder, as well as routine normal straight leg raise testing. (*Id.* 27-28.)

Given that ALJ Shillin's RFC assessment addressed all of the tasks and abilities associated with medium work, her failure to refer to those tasks and abilities by name did not constitute error.

\* \* \*

In sum, I find that ALJ Shillin conducted a thorough functional analysis based on the objective medical record and, in doing so, addressed the five categories of tasks and abilities listed in SSR 83-10 as being associated with medium work. While the claimant disagrees with the ALJ's assessment and cites contrary evidence, the ALJ's decision is supported by substantial evidence and therefore will be upheld.

### IV. CONCLUSION

For the reasons set forth above, the Commissioner's decision is **AFFIRMED**. A separate order will issue.

Dated: March 30, 2023

/s/ Kevin McNulty

**Hon. Kevin McNulty
United States District Judge**